## Estate of Annie Connor.

*Contract for the sale of land—Specific performance—Capacity of grantor—Buyer—Down money—Mutuality of obligation—Purchase money—Time of payment.*

Equitable principles govern the granting of a petition for a decree of the specific performance of a contract for the sale of real estate. The granting of such a petition is a matter of grace not of right.

The court will not refuse specific performance of a written contract for the sale of real estate, because the grantor was ninety years of age and could read only large type and was unable to write, when there is testimony that she was shrewd in business matters, and that the price was fair and about the market value.

There can be no specific performance of a written contract for the sale of real estate, where the essentials of the contract do not appear without the aid of extrinsic proof, but the buyer is sufficiently disclosed by the fact that the down money was paid by him.

Where the contract recites that the purchase money is to be paid as soon "as association grants the money," there is mutuality of obligation, and full preparedness to pay at the time of granting of the decree is sufficient to support it.

Argued December 1, 1924. Appeal, No. 150, Oct. T., 1924, by Ella Bohmwetsch, from the decree of O. C. Montgomery Co., May T., 1923, No. 36, for the specific performance of a contract, in the Estate of Annie Connor, deceased. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Petition for decree of specific performance of a contract for the sale of real property. Before SOLLY, P. J.

The facts are stated in the opinion of the Superior Court.

The court granted the decree. Ella Bohmwetsch appealed.

*Charles D. McAvoy,* for appellant.

*Henry M. Tracy,* for appellee.

OPINION BY TREXLER, J., February 27, 1925:

I. Newton DeHaven presented his petition to the orphans' court asking for the specific performance of a contract for the sale of real estate which he had made with Annie Connor who died before the contract was carried out. The contract is in writing and reads as follows: "March 31, 1923. Received of I. N. DeHaven $10

19, (1925).]              Opinion of the Court.

(Ten Dollars) as down money on property of Annie Conners which was sold for the sum of $2,500.00/100 which is to be paid as soon as the association grants the money. Located at 947 Ford St., W. Conshohocken, Pa., formerly estate of Patrick Conners. Annie Connor x her mark. Witness, W. D. Wells, Thora M. Cole." The lower court granted the petition and decreed specific performance.

It may be admitted at the outstart as urged by the appellant that equitable principles govern the case and that the granting of the petition was a matter of grace by the lower court and not of right. The appellant urges, among other things, that the circumstances under which the agreement was signed and the mental and physical incapacity of the decedent and the inadequacy of price should have led the lower court to have refused the petition. These are objections, of course, that arise beyond the agreement, and are not defects inherent in it. The lower court heard witnesses and came to the conclusion that decedent had a clear understanding of the whole matter and wanted to sell the property to the petitioner at practically her own price and upon terms of payment satisfactory to her. True it was, she was ninety years of age and could not write but she could read newspapers and books if in large print. She was possessed of her faculties to a marked degree, considering her age, was active and attended to her business with the assistance of her life long friend who testified that decedent knew what she was doing and had a general knowledge of affairs. The premises in question were put into a real estate agent's hand for sale about a year before this present contract was made at the price of $3,000. They were offered to a number of people at the price of $2,600 and declined. The purchaser in this case did not ask for the property. The decedent brought it to his attention and fixed the price the same as she had for other people $2,600. When I. Newton DeHaven observed that the house was in need of repair the decedent admitted

this fact and subsequently allowed $100 for costs and repair. She took ten days to consider the matter whether she would sell the property at $2,500. The agreement of sale was read to her in the presence of witnesses and she expressed her satisfaction with it. Her desire to dispose of the property may have been hastened by a disagreement which existed between her and her daughter to whom she had devised the property. There was testimony, that she had a poor memory and did not know the day of the week and month, but even these witnesses qualified their narration by admitting that she was shrewd in her business matters and conversing upon common day topics. There were some witnesses who fixed the market value at $3,500 to $4,000 but their testimony was not apparently based upon their familiarity with sales in the neighborhood but upon personal examination of the property just before they were called and conversation with people in the neighborhood. The real estate agents who seemed to be conversant with the property placed the market value at about the price it was sold to the present purchaser. The court definitely decided that $2,500 was a fair price and about the market value and there was abundant testimony to support this. We think the lower court was right in finding, as far as the objection to her capacity to contract or to her being taken advantage of in the deal, there was no merit in either position.

The first objection urged to the contract is that it lacks mutuality and shows that DeHaven only gave decedent $10 on account as down money and it is argued that he may have been merely an agent, there being no grantee mentioned. There can be no specific performance where the essentials of the contract do not appear without the aid of extrinsic proof. The Act of Assembly June 7, 1917, P. L. 447, section 18, provides for a decree of specific performance of contracts entered into by a person who has died leaving the contract unperformed. This act of course is to be construed in connection with

the Act of April 22, 1856, P. L. 532, section 5, known as the Statute of Frauds. The present contract is signed by the decedent. The buyer is disclosed by the fact that the down money was paid by him. There have been numerous cases where a contract giving an option to purchase was held to be binding upon the vendor. In the case of Sylvester v. Born, 132 Pa. 467, it was held that the receipt having been signed by the vendor and delivered to and accepted by the vendee, it created a binding contract specifically enforceable by the latter, notwithstanding that it was not signed by him. See Loughney v. Quigley, 279 Pa. 396. It has been held in Corson v. Mulvaney, 49 Pa. 88, that an agreement for the purchase of land at the option of the vendee is not so devoid of mutuality that it will not be enforced. The case cited by the appellant, James v. Penn Tanning Co., 221 Pa. 634, is not parallel. In that case one party was merely mentioned by the use of the pronoun "we," and there were other elements which rendered it uncertain. The identity of the purchaser, as we have stated, is disclosed for the money is said to be received of I. Newton DeHaven as down money on the property. To argue that DeHaven might be an agent for some one is, we think, not based upon any sound foundation. The reasonable inference is that the party named was acting for himself.

The other objection to the contract is the want of a definite time for performance and this we regard as the only debatable question presented to us. It will be observed that the sum was to be paid as soon "as association grants the money." It has been held in Andrews v. Bell, 56 Pa. 343, that when an agreement specifies no time when the deed shall be made and the consideration paid, it is to be understood as imposing an obligation to execute the contract at once, or at least without unreasonable delay. In Moore's Est., 191 Pa. 600, decedent contracted to sell land under an agreement by which the purchaser was to raise a loan and apply the money from

it to the construction of a building, and to the payment of liens existing upon the property. After the time for the fulfillment of the contract had expired the purchaser succeeded in securing the money but decedent was unable to attend to business and shortly afterward died, the orphans' court decreed specific performance. In Werdebach's Est., 280 Pa. 26, it is stated, "where one, ready to make settlement, of a contract of sale of real estate, has his arrangements to that end thwarted by the act, or default, and subsequent death of the opposite party, and, following that event, he seeks specific performance, full preparedness 'at the time of final decree,' is sufficient." It was shown by testimony that the purchaser in this case had secured the loan from the building association and was ready to perform his contract.

The decree of the orphans' court is affirmed, the appellant for costs.