421 A.2d 427

**Courtney B. DAVIS, Ronald Fogel, Thomas Swartley, Calvin Wolfgang, Thomas Tolson, Individually and Trading as the Post Group, Appellants,**

**v.**

**Rodney T. BUCKHAM.**

**Courtney B. DAVIS, Ronald Fogel, Thomas Swartley, Calvin Wolfgang, Thomas Tolson, Individually and Trading as the Post Group**

**v.**

**Rodney T. BUCKHAM, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Filed July 25, 1980.

Michael Minkin, Philadelphia, for appellants (at No. 666) and for appellees (at No. 725).

Robert A. Naragon, Doylestown, for Rodney T. Buckham.

Before SPAETH, CAVANAUGH and O'KICKI, JJ.*

SPAETH, Judge:

These are two appeals from an order dismissing exceptions to the chancellor's adjudication and decree nisi. In Appeal No. 666, the appellants are Courtney Davis, Ronald Fogel, Thomas Swartley, Calvin Wolfgang, and Thomas Tolson, individually and trading as the Post Group; the

---

* President Judge JOSEPH O'KICKI, of the Court of Common Pleas of Cambria County, Pennsylvania, is sitting by designation.

appellee is Rodney Buckham. In Appeal No. 725, Buckham is the appellant, and the Post Group is the appellee. The issue on both appeals is whether the chancellor properly construed and enforced a covenant by Buckham not to compete with the Post Group.

On November 10, 1969, Buckham, Davis, Fogel, and Swartley[1] entered into a partnership agreement for the practice of physical therapy as the Post Group. Buckham was the only senior partner,[2] and upon his withdrawal he was entitled under paragraph 12 of the agreement to an amount equal to three times his income for the last calendar year before his withdrawal, payment to be made in 260 weekly installments. The agreement also provided, in paragraph 14, that upon withdrawing from the Post Group, Buckham was not to engage in the practice of physical therapy within a fifteen mile radius of Doylestown, Pennsylvania, for a period of five years.

On November 4, 1970, Buckham withdrew from the Post Group. Since his income for the previous calendar year had been $24,187.44, under paragraph 12 the Post Group became liable to him for $72,562.32, payable in 260 weekly installments. The Post Group paid the installments as they became due. In 1974, however, after having paid Buckham approximately $61,000, the Post Group became aware that Buckham was practicing physical therapy within a fifteen mile radius of Doylestown. It thereupon brought the present action in equity, in the meantime placing the balance due under paragraph 12 in escrow pending resolution of the action. The theory of the action is that the payment provided by paragraph 12 was consideration for the cove-

1. Wolfgang and Tolson became associated with the Post Group later.

2. The agreement provided:
   2. The partnership shall initially be composed of one senior partner and three junior partners. Buckham shall be the senior partner and Davis, Fogel and Swartley, the junior partners. It is understood and agreed, however, that Davis shall become a senior partner five years from the effective date of this agreement, that Fogel shall become a senior partner seven years from said date, and that Swartley shall become a senior partner ten years from said date.

nant in paragraph 14 not to compete, and that by breaching the covenant, Buckham forfeited his right to the payment.

A hearing was held on December 8, 1977, and the chancellor filed her adjudication and decree nisi on September 29, 1978. The chancellor held that Buckham had violated paragraph 14 but that the Post Group had failed to prove any damages. She also held that the paragraph 12 payment was not consideration for the paragraph 14 covenant. She therefore awarded the Post Group damages of $1 and ordered it to pay Buckham the balance due under paragraph 12. The chancellor went further, however, and entered an order enjoining Buckham from engaging in the practice of physical therapy for a period of five years from the date of the decree nisi. Both sides filed exceptions but these were dismissed by the court en banc. These appeals followed.

It is settled that "the findings of fact of the [c]hancellor who heard the testimony without a jury, approved by the court en banc, are entitled to the weight of a jury's verdict; that such findings are controlling and that the court's decree should not be reversed unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Barbet v. Ostovar*, 273 Pa.Super. 256, 259–260, 417 A.2d 636, 638 (1979), *quoting Bogosian v. Foerderer Tract Committee*, 264 Pa.Super. 84, 89, 399 A.2d 408, 411 (1979); *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 297, 344 A.2d 837, 840 (1975). It is also settled, however, that "[w]hen a finding of fact is simply a deduction from other facts and the ultimate fact in question is purely a result of reasoning, the appellate court may draw its own inferences and arrive at its conclusions from the facts as established." *In Matter of Estate of McKinley*, 461 Pa. 731, 734 n.1, 337 A.2d 851, 853 n.1 (1975), *citing, Publicker Estate*, 385 Pa. 403, 410, 123 A.2d 655, 660 (1956). Indeed, the court on appeal need not give deference to the legal conclusions of the chancellor. *Snow v. Corsica Construction Co., Inc.*, 459 Pa. 528, 329 A.2d 887 (1974); *Yuhas v. Schmidt*, 434 Pa. 447, 258 A.2d 616 (1969).

Our review of the arguments made by the parties to the appeals in this case indicates that the chancellor's findings of fact are not disputed but that the legal conclusions drawn from those findings are disputed. As to the chancellor's findings, we are bound; as to her conclusions, we shall render our own decision.

–Appeal No. 666–

In its appeal the Post Group argues that the chancellor erred in her conclusion that its promise, in paragraph 12, to pay Buckham upon his withdrawal was not consideration for Buckham's promise, in paragraph 14, not to compete. It is the Post Group's view that the promise to pay was consideration for the promise not to compete; that by competing, Buckham forfeited his right to the payment; and that he should be required to repay the same $61,000 that he has been paid.

Paragraph 12 provides:

12. The partnership hereby created may be dissolved by mutual consent or by any partner giving the other partners three months' written notice to the last known address of each of the other partners.

The interest of the withdrawing senior partner shall be three times his income of the last previous calendar year, payable in weekly installments over a period of two hundred and sixty (260) weeks, the first payment to be made one (1) week subsequent to the termination of the three (3) months written notice provision provided for in this paragraph.

Paragraph 14 provides:

14. In the event that Buckham shall withdraw from the partnership, Buckham agrees and covenants that he will not engage in the practice of physical therapy within the Borough of Doylestown, or within a radius of fifteen (15) miles thereof, for a period of five (5) years from the date of said withdrawal.

It will be noted that neither paragraph contains a cross–reference to the other. Moreover, no portion of the payment

promised in paragraph 12 is described or defined or otherwise referred to as consideration for the promise in paragraph 14 not to compete. Nor is there any provision for liquidated damages. Thus, the Post Group's reliance upon this court's decision in *Ebright v. Shutter*, 254 Pa.Super. 509, 386 A.2d 66 (1978), is misplaced, for in that case we permitted an award based upon a contractual provision that specifically provided that a portion of a payment was consideration for the covenant not to compete. *And see Stover v. Spielman*, 1 Pa.Super. 526 (1896) (where actual damages for breach of covenant not to compete are difficult of ascertainment, stipulated damages provision will be enforced).

■ The payment promised in paragraph 12 is not only not described as consideration for the promise in paragraph 14 not to compete, but it is described as "[t]he interest of the withdrawing senior partner," to be computed upon the senior partner's income. Thus, the promise to pay was tied to the success of the partnership during the senior partner's participation. When so regarded, the promise to pay is seen to be in return for—in consideration of—the senior partner's surrender of his right to participate in the partnership, and not in consideration of his promise not to compete after his withdrawal. We recognize that the payout period, 260 weeks, is the same as the covenant period of five years, but given the other features of the agreement, that fact does not by itself justify the conclusion that the payment was consideration for the covenant.[3]

We thus conclude, as did the chancellor, that the payment due under paragraph 12 was not related to the covenant set forth in paragraph 14. The order requiring that the balance due under paragraph 14 be paid will therefore be affirmed.

## –Appeal No. 725–

In his appeal Buckham argues that the chancellor erred in concluding that he had violated the covenant not to compete,

---

**3.** We also recognize that Buckham stated below that the payment under paragraph 12 was consideration for the covenant in paragraph 14. This statement, however, was made *arguendo* in support of Buckham's claim that the covenant not to compete was unenforceable. *See Randall v. Quetsch*, 44 Wash.Co. 204 (1964).

and in enjoining him from engaging in the practice of physical therapy for an additional five year period.

■ Buckham's first argument is without merit. The evidence was that Buckham maintained an office in Doylestown, listed himself as a physical therapist in the Doylestown telephone directory, billed patients from that office, and treated patients at a clinic within a radius of fifteen miles of Doylestown. This evidence was sufficient to support the chancellor's conclusion that Buckham had violated the covenant not to compete.[4]

■ Buckham's second argument, however, has merit. In *Hayes v. Altman*, 438 Pa. 451, 266 A.2d 269 (1970), the lower court enjoined the plaintiff's former employee from engaging in the practice of optometry under a three year restrictive covenant after the three year period had expired. Reversing, the Supreme Court held that "[a]n injunction will not be granted to enforce a restrictive covenant when the restrictive period has by its terms expired." *Id.*, 438 Pa. at 455, 266 A.2d at 271, *citing, Meeker v. Stuart*, 188 F.Supp. 272 (D.D.C.1960), *aff'd*, 289 F.2d 902 (D.C. Cir. 1961) (former partner violates restrictive covenant; remaining partner may not get injunction after period has expired but is limited to damages). *See DeLong v. Lucas*, 176 F.Supp. 104 (S.D.N.Y.1959), *aff'd*, 278 F.2d 804 (2d Cir. 1960); *Sherman v. Pfefferkorn*, 241 Mass. 468, 135 N.E. 568 (1922); *Wedin v. Atherholt*, 298 Mich. 142, 298 N.W. 483 (1941); *Goldberg v. Goldberg*, 205 App.Div. 435, 200 N.Y.S. 3 (1923); *Abalene Pest Control Service, Inc. v. Hall*, 126 Vt. 1, 220 A.2d 717 (1966). Here, similarly, since the five year period has expired, no injunction may issue. In *Hayes*, the Court recognized cases in which the time for performance was extended, but it noted that "in each of these cases, if the court had not granted the extension some harm would have befallen the moving party," 438 Pa. at 456, 266 A.2d at 271, adding that

4. The Post Group does not dispute the chancellor's conclusion that it failed to prove any damages because of Buckham's violation. Buckham has made no argument concerning the propriety of the chancellor's award of $1 in damages.

in the case before it, the period "ha[d] long since passed when the restrictive covenant . . . could be of any protection," *id.* The cases cited by the Court in *Hayes* in which extensions were granted all involved actions for specific performance of a sales contract after the contract period had expired; none involved a covenant not to compete. *See McFarland v. Gregory,* 322 F.2d 737 (2d Cir. 1963) (sale of realty); *Erkess v. Eisenthal,* 354 Pa. 161, 47 A.2d 154 (1946) (semble); *Levin v. Pittsburgh U. Corp.,* 330 Pa. 457, 199 A. 332 (1938) (stock); *Bloshinski v. Falaz,* 168 Pa.Super. 565, 79 A.2d 798 (1951) (realty). Since covenants not to compete must be strictly construed, *see Hayes v. Altman, supra,* 438 Pa. at 454, 266 A.2d at 271, it is questionable whether in any case a chancellor would be justified in extending the period of the restriction. Assuming *arguendo* that such a case might arise, this is not it, for given the Post Group's failure to prove any damages because of Buckham's violation, we cannot conclude that an extension could be justified as necessary for the Post Group's protection.

We realize that the chancellor did not state that she was extending the period of the restriction by enjoining Buckham after the period had expired but instead maintained that she was merely enforcing the intent of the agreement as being to restrict competition during "*a* period of five years," not necessarily *the* five year period that started from the date of withdrawal. This construction of the agreement, however, is not acceptable. The provision in question reads, "for a period of five (5) years from the date of said withdrawal." In our opinion this clearly manifests the intent to prevent competition by Buckham for the *first* five years after withdrawal, not for some unspecified later five year period. Moreover, we note that apparently the chancellor herself was of this opinion, for she specifically found that Buckham had violated the covenant during the first five years, and on that basis assessed damages (albeit nominal) against him. Indeed, when the chancellor's decree nisi is considered as a whole, it becomes apparent that she effectively made the five year covenant a thirteen year covenant, for instead of restricting Buckham's competition only from

November 1970, the date of his withdrawal, to November 1975, she extended the covenant to September 1983, *i. e.*, five years from the date of her decree nisi of September 29, 1978, and almost thirteen years from the date of withdrawal. Our courts have often reformed overly broad restrictive covenants by interpreting their terms narrowly. *See Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976) (collecting cases). Here, the chancellor did the opposite.

The order of the lower court in Appeal No. 666 is affirmed.

The order of the lower court in Appeal No. 725 is affirmed except that that portion of the decree enjoining Buckham from engaging in the practice of physical therapy for five years from the date of the chancellor's decree *nisi* is vacated.