**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

R. MARK BLACKSTEN,

 Plaintiff-Appellant,

v.

FEDERATED MUTUAL INSURANCE
COMPANY; FEDERATED LIFE
INSURANCE COMPANY, a Minnesota
corporation,

 Defendants-Appellees.

No. 98-6416
(D.C. No. 98-CV-328)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, Circuit Judge, **HENRY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

---

 R. Mark Blacksten ("Blacksten") was employed as a marketing representative by

Federated Mutual Insurance Company and Federated Life Insurance Company

("Federated") from November, 1989 until he resigned on August 31, 1995. His job was

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

to sell insurance policies for Federated within a designated area in Oklahoma.[1]

Blacksten's employment contract with Federated had a "non-compete" provision. After

Blacksten terminated his employment with Federated, the latter sent Blacksten two letters

by certified mail, the first on March 27, 1996 and the second on May 8, 1996, stating that

it had information that Blacksten had "solicited and written Federated business" within

his territory in violation of their non-compete agreement and asked for restitution in the

amount of some $81,490.15. Blacksten did not respond to either letter.[2]

On July 22, 1996, Federated filed suit in the United States District Court for the

Western District of Oklahoma against Blacksten, alleging breach of contract for violation

of the non-compete provision of their employment contract and seeking money damages

and injunctive relief. In that action Blacksten filed a counterclaim alleging in Count 1

antitrust violations under Okla. Stat. tit. 79, § 1 *et seq.* (repealed 1998, current version at

Okla. Stat. tit. 79, § 203 *et seq.*), in Count 2 age discrimination, citing no statute, state or

federal, and in Count 3 fraud. After discovery, both parties moved for summary

---

[1]After his resignation Blacksten continued to sell insurance policies and retained his same offices.

[2]The non-compete clause provided, in effect, that Blacksten would not in any way solicit insurance sales from Federated's clients within his designated territory for a period of two years after his employment with Federated ended. In Federated's letter to Blacksten, dated March 27, 1996, Federated "demanded" that Blacksten "cease and desist" and demanded payment of $81, 490.15 as liquidated damages. In its second letter to Blacksten, Federated noted that it had received no response from Blacksten to its earlier letter and concluded by stating that if Blacksten "failed to respond to Federated's demands" it would enforce its rights through legal action.

judgment. Blacksten thereafter moved to amend his age discrimination claim, stating that it was not really an age discrimination claim but was intended to be a breach of contract claim. The motion to thus amend was denied for unexcused tardiness. On March 11, 1997, the district court granted Blacksten's motion for summary judgment and dismissed Federated's claims against him. At the same time the district court granted summary judgment in favor of Federated on Blacksten's claims based on antitrust violation and fraud (Counts 1 and 3) and dismissed Blacksten's claim based on age discrimination (Count 2) on the ground that Blacksten by his motion to add a breach of contract claim had "disavowed" his age discrimination claim. Neither party appealed.

On November 10, 1997, Blacksten instituted the present action against Federated in the district court of Cleveland County, Oklahoma, seeking money damages for malicious prosecution, breach of contract and fraud. Federated removed the action to the United States District Court for the Western District of Oklahoma. 28 U.S.C. § 1441(a). Blacksten later amended his complaint to include an additional claim for violation of Oklahoma's Protection of Labor Act, Okla. Stat. tit. 40, § 165.1 *et seq.* Federated moved for summary judgment on Blacksten's malicious prosecution claim, his claims based on contract and fraud, as well as his additional claim based on the Protection of Labor Act. Blacksten, in turn, moved for summary judgment on his Labor Act claim. On September 25, 1998, the district court granted summary judgment in favor of Federated on all of Blacksten's claims and denied Blacksten's motion for summary judgment on his Labor

Act claim. Blacksten thereafter filed a motion to reconsider, and attached thereto, *inter alia,* depositional testimony of Federated's in-house counsel, Ms. Melissa Sviggum. Federated moved to strike the depositional testimony of Ms. Sviggum. On December 30, 1998, the district court granted Federated's motion to strike and at the same time denied Blacksten's motion to reconsider. Blacksten appeals.

On appeal, Blacksten urges four grounds for reversal: (1) the district court erred in granting summary judgment to Federated on the malicious prosecution claim; (2) the district court erred in granting summary judgment to Federated on Blacksten's breach of contract claim; (3) the district court erred in striking the depositional testimony of Ms. Sviggum attached to Blacksten's motion to reconsider; and (4) the district court erred in denying Blacksten's motion to reconsider. [3] We shall first consider the district court's grant of summary judgment on Blacksten's malicious prosecution claim.

Jurisdiction in the present case is based on diversity, Blacksten being a citizen and resident of Oklahoma, and Federated being a Minnesota corporation with offices in Oklahoma, with the amount in controversy exceeding $75,000.00. 28 U.S.C. § 1332. Under Oklahoma law, the essential elements of a malicious prosecution action are: (1) the bringing of the original action by the defendant; (2) the successful termination of the original action in favor of the plaintiff; (3) a lack of probable cause to bring the original

---

[3]Blacksten does not appeal the district court's grant of summary judgment in favor of Federated on his claims of fraud and violation of Oklahoma's Protection of Labor Act.

action; (4) maliciousness in bringing the original action; and (5) damages. *Neely v. First State Bank, Harrah,* 975 P.2d 435, 437 (Okla. 1998) (citing *Young v. First State Bank, Watonga,* 628 P.2d 707, 709 (Okla. 1981)).  Failure to establish any one of those elements defeats an action for malicious prosecution.

As indicated, the district court, in the original action wherein Federated sued Blacksten for violation of the non-compete provision in the employment contract between Federated and Blacksten, granted Blacksten's motion for summary judgment.  In entering summary judgment for Blacksten on Federated's claim based on violation of the non-compete provision of their contract, the district judge spoke as follows:

> In the instant case, it appears to be undisputed that the customers in question sought out and contacted the Defendant after his departure from the company, and not the other way around.  The Plaintiffs offer the deposition testimony of four former customers, Mr. Leon Smith of Leon's Plumbing, Mr. Jerry O'Connor of Harvey's Chevrolet, Mr. Dee French of French Distributing, and O. B. Whittit of R & K Distributing, each of whom now carries their insurance with the Defendant's new company.  The Defendant offers affidavits from the same four individuals.  The deposition testimony and affidavits consistently show that the customers sought out and contacted the Defendant after his departure from the Plaintiff's employment.  Each of them averred that the Defendant quoted rates for them only after they initiated contact with him, and requested a quote.  One of the customers in question had been a personal friend of the Defendant for years; others apparently called on the Defendant simply because they had done business with him for a period of time.
>
> The Plaintiffs offer no evidence that the Defendant initiated contact with any of these individuals, or with any other Federated policy holders.  Rather, the Plaintiffs urge the

Court to interpret "solicit" as meaning "to try to obtain," citing Black's Law Dictionary. The Plaintiffs also argue that the Defendant violated the terms of his employment agreement by "quoting" rates for these policy holders at their request, or by "facilitating" the loss of these policies, or by "diverting" business away from the Plaintiffs.

The Plaintiff's interpretation of the contract would render it overly broad. To the extent that the contract would prohibit the Defendant from quoting rates for or accepting insurance business from customers who *contact him* asking for assistance or rate quotes, the contract places unreasonable restraints upon the Defendant as well as the customers. Enforcement of such a provision would have the effect of appropriating the Defendant's goodwill, rather than protecting that of the Plaintiff companies. *Accord, Harry Blackwood, Inc. v. Caputo,* 434 A. 2d 169 (Pa. Super. 1981).

As also above indicated, the district judge in the instant case granted Federated's motion for summary judgment as to Blacksten's action for malicious prosecution, Count 1 of Blacksten's petition, based on "lack of probable cause," concluding that Blacksten had failed to show that there was a "want of probable cause" on the part of Federated when it instituted its original action against Blacksten. In thus concluding, the district judge, who was not the judge in the original action, spoke as follows:

Having carefully reviewed the parties' briefs and evidentiary submissions related to this motion, the Court finds plaintiff has failed to submit evidence of the third element, want of probable cause. As noted by defendants in their reply brief, plaintiff concedes he did not respond to Federated's two letters explaining to him that Federated had information indicating he was violating the non-compete clause, and Blacksten submitted no evidence that he ever denied violating the clause prior to the initiation of *Blacksten I. See* Defendants' Reply to Plaintiff's Response to Defendant's Second Motion for Summary Judgment at 2-3 (Sep. 17,

1998).

> Applying Oklahoma law concerning malicious prosecution actions to the facts of this case, the Court finds and concludes Federated is entitled to summary judgment on plaintiff's Count 1 (malicious prosecution).

On appeal, the parties apparently agree that under Oklahoma law a non-compete clause which prohibits a former employee from "in any way soliciting" business from the clients of his former employer is valid and enforceable, but that an erstwhile employee who does not in anyway "solicit," may respond to a client of his erstwhile employer who initiates the contact with him, asking for quotes and prices, and the like, and eventually, in our case, selling an insurance policy to the client of the employer.[4] Thus, the battle line is drawn: Did Blacksten in anywise solicit business from Federated's clients or was this a case of Federated's clients contacting Blacksten and eventually doing business with him? On appeal, Blacksten contends that, on the basis of the record before her, the district judge erred in concluding that Federated had probable cause based on a reasonable belief that Blacksten was soliciting business from Federated's clients, whereas Federated contends that the record supports the district judge's holding that Federated had probable cause based on a reasonable belief that Blacksten was soliciting business from Federated's clients in violation of their non-compete provision.

There is, of course, no dispute as to whether Blacksten was the prevailing party in

---

[4]In *Bayly, Martin & Fay, Inc. v. Pickard,* 780 P.2d 1168, 1175 (Okla. 1989), the Oklahoma Supreme Court held that "[w]here no active solicitation has occurred, restraint on an insurance agent's dealings with former clients is unenforceable."

Federated's action for violation of the non-compete clause in the employment contract. As indicated, the district court in that action granted summary judgment in Blacksten's favor. In this regard, the reasoning of the district court has been set forth above. We recognize that Federated, of course, could still have "probable cause" even though its claim for violation of the non-compete provision was dismissed on summary judgment.

The district court in the instant case granted Federated's motion for summary judgment on Blacksten's claim of malicious prosecution, and in support of its determination only made reference to the fact that Blacksten made no response to Federated's letters of March 27, 1996 and May 8, 1996. The district court apparently was of the view that Blacksten's failure to respond to Federated's letters of March 27 and May 8, 1996 was sufficient to show probable cause on the part of Federated. In this regard, Blacksten, by affidavit and in his deposition, stated that he didn't feel obligated to respond to those letters since their basic "demand" was that he make restitution in the amount of over $80,000.00. In this general connection, counsel for Federated would make much of the fact that Blacksten in his deposition, under cross-examination, conceded that his actions under the "plain English" test might have violated the non-compete provision, though at the same time Blacksten stated, in effect, that it was his understanding that his actions did not violate the interpretation given a clause of this particular type by Oklahoma courts. In this connection, Blacksten stated that he had obtained legal advice as to what he could, or could not do, and was advised that he could

- 8 -

not solicit, i.e., make the initial contact, but that he could respond if the client of Federated made the initial contact, and that he could answer unsolicited contacts as to his rates, and the like.

On appeal, Federated apparently agrees that under Oklahoma law the contract here involved precluded Blacksten from soliciting, in any way, business from Federated's clients, but did not preclude Blacksten from answering unsolicited inquiries from Federated's clients as to his rates, and from selling insurance policies to those who preferred him over Federated. In any event, Blacksten suggests that if Federated had made adequate "research" prior to bringing its action it would have known such. Further, it would appear from the record that prior to instituting suit against Blacksten over the non-compete clause Federated made no inquiry of its former clients who later switched to Blacksten as to whether Blacksten "solicited" them, or whether they made the initial contact. Blacksten suggests that indeed the record shows the contrary, that in each instance the initial contact was made by Federated's client, and not by him. And Blacksten puts particular emphasis on the affidavits of Johnny Grimes, Sabrina Sublett and Steve Scherer.

In his affidavit Johnny Grimes stated that he was a former district marketing manager for Federated, and that before Federated filed its action against Blacksten he was asked by Bob Swygman, Federated's regional marketing manager, whether he (Grimes) thought Blacksten had been soliciting Federated's clients. Grimes stated he replied that

Blacksten was "too smart" to violate their non-compete clause and that they (Federated) had better talk to the former clients before bringing suit. He added that as far as he knew Federated never "talked to those former clients." Grimes went on to state that after a hearing on a request for a temporary injunction, it became clear to him that Federated had not talked to any former client who later did business with Blacksten. He concluded by stating that when he suggested to Bob Swygman that Federated could not prove that Blacksten violated the non-compete clause, Swygman replied that "the most important thing was that it was time to play offense," and to make Blacksten sweat.

In her affidavit, Sabrina Sublett stated that she was a former marketing representative for Federated and that she was present at a meeting of Federated's employees when the subject came up about Blacksten's actions, and that when there was discussion as to whether Federated could prove its allegations that Blacksten had violated the non-compete clause, Bob Swygman became very angry and stated "We don't care if we lose [the case against Blacksten]. We have more money than Blacksten and we are going to show him."

Steve Scherer, another former marketing representative for Federated, in his affidavit, stated that he, too, was present at a meeting where Blacksten's actions were the subject of discussion, and that Bill Heagle, a former regional marketing manager, stated that "we have more money than Blacksten."

As concerns Blacksten's malicious prosecution action, the issue is whether on the

record before it the district court erred in granting summary judgment in favor of Federated. Was the evidentiary matter before the district court so one-sided that a reasonable jury could not have found that in suing Blacksten for violation of the non-compete clause Federated acted maliciously and without probable cause? We hold that on the record before it, the issue of probable cause, or lack of probable cause, did not warrant summary judgment in favor of Federated, but was a matter to be resolved by a jury. *See Kitchens v. Bryan Cty. Nat'l Bank*, 825 F.2d 248, 251-52 (10th Cir. 1987). To the same effect, *see Powell v. Le Force*, 848 P.2d 17, 19-20 (Okla. 1992). As above indicated, unlike the district court, we believe that Blacksten's failure to respond to Federated's two letters from in-house counsel is insufficient, standing alone, to justify summary judgment to Federated, particularly when such is considered along with the other evidentiary matter in the record. In this regard, it would appear that prior to instituting suit against Blacksten for violation of the non-compete clause, Federated made no inquiry of any of its former clients who had switched to Blacksten as to whether they, or Blacksten, had initiated their contact, and that, in fact, in each instance it was the former client, and not Blacksten, who initiated the original contact. The affidavits of Grimes, Sublett and Scherer indicate that such was the case and also indicate that Federated was going to "show" Blacksten and make him "sweat." In our view the district court erred in granting Federated summary judgment on Blacksten's action for malicious prosecution.

The district court also granted summary judgment for Federated on Blacksten's breach of contract claim. We find no error in this regard. In the original proceeding wherein Federated sued Blacksten, the latter filed a counterclaim, alleging antitrust violations, age discrimination and fraud. Blacksten later tried to convert his age discrimination claim to a breach of contract claim, but his request therefor was denied on the basis of untimeliness. Certainly any breach of contract claim could have been asserted by Blacksten in his counterclaim, but was not. Under the authorities cited by the district court, it did not err in granting summary judgment for Federated on Blacksten's breach of contract claim. *Nwosun v General Mills Restaurants, Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997).

In view of our disposition of the foregoing matters, we need not consider Blacksten's further contention that the district court erred in denying his motion for reconsideration. The judgment insofar as it granted Federated summary judgment on Blacksten's malicious prosecution claim is reversed and the case remanded for further proceedings consistent with this order and judgment. Otherwise, the judgment is affirmed.

Entered for the court,

Robert H. McWilliams
Senior Circuit Judge